UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
STANLEY ARNOLD                                  :

        Petitioner,                          :

  -v.-                                                 :       REPORT AND
                                                              RECOMMENDATION
WESTCHESTER COUNTY, et al.           :       09 Civ. 3727 (JSR) (GWG)

        Respondents.                       :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

     Stanley Arnold has filed a pro se complaint under 42 U.S.C. § 1983 raising allegations of mistreatment by staff at the Westchester County Jail in Valhalla, New York. All defendants who have appeared in this action have filed a motion to dismiss. For the reasons discussed below, the claims against these defendants should be dismissed, with the exception of one claim against one of the defendants.

I.    BACKGROUND

    A.    Procedural History

     In April 2007, Arnold was a pretrial detainee at the Westchester County Jail in Valhalla, New York ("Westchester County Jail"). See Westchester County Department of Correction Uniform Commitment Form from Local Criminal Court (annexed as Ex. B to Declaration of Melissa-Jean Rotini, filed Sept. 2, 2009 (Docket # 13) ("Rotini Decl.")). On April 13, 2009, he filed a complaint in the Southern District of New York raising claims under 42 U.S.C. § 1983 and named Nurse Jean Kadel, Officer Anthony Watson, Sergeant Alan Carden, and Sergeant O'Shaughnessy as individual defendants. See Complaint, filed Apr. 13, 2009 (Docket # 2) ("Compl."), at 2. In addition, Arnold listed as a defendant the "Emergency Response Team"

1

("ERT"). Id.  He also named the Westchester County Department of Corrections as a defendant. Id. at 1.

Service was not effectuated on O'Shaughnessy or the ERT.  Watson, Carden, Kadel, and the Westchester County Department of Corrections (collectively "the defendants") have now filed a motion to dismiss.  See Notice of Motion to Dismiss the Complaint, filed Sept. 2, 2009 (Docket # 11); Memorandum of Law in Support of County Defendants' Motion to Dismiss the Instant Action Pursuant to Rules 8, 10, and 12(B)(6) of the Federal Rules of Civil Procedure, filed Sept. 2, 2009 (Docket # 12) ("Def. Mem.").  Arnold responded to the motion by letter. Response to Defendants Motion to Dismiss, dated Sept. 10, 2009 (Docket # 21) ("Pl. Resp."). Defendants filed a reply.  See Reply Memorandum of Law, filed Oct. 19, 2009 (Docket # 15) ("Def. Reply").

    B.    Facts

For purposes of this motion, the Court accepts as true the facts alleged in Arnold's complaint.  Also, in light of Arnold's pro se status, the Court will consider the relevant factual allegations contained in his opposition letter.  See, e.g., Woods v. Goord, 2002 WL 731691, at *1 n.2 (S.D.N.Y. Apr. 23, 2002) (considering pro se prisoner's factual allegations in briefs as supplementing the complaint); Burgess v. Goord, 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999) ("In general, 'a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum.'" (quoting Gadson v. Goord, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997))).

Arnold's papers describe two incidents that occurred during his detention at Westchester County Jail in April 2007.

First, on April 4, 2007, Arnold injured his back while attempting to climb up and down from his bunk bed. Additional Facts (annexed to Compl.) ("Add'l Facts"), at 2.[1] Arnold, who suffers from chronic back problems, had previously complained to defendants Carden and Kadel about the bed assignment. Pl. Resp. at 2. He had explained that he was having "problems climbing on tables and jumping up to access the top bunk of [the] bunk bed." Id. Instead of moving him when he complained, Carden referred him to Kadel, a nurse practitioner, who refused to have him moved. Id. The defendants thus "caused [Arnold] to injure [him]self on their equipment. [He] was injured because of the defendants['] negligence and faulty equipment." Id.

Second, on April 10, 2007, Arnold was assaulted first by an inmate in his dormitory and then by members of the ERT summoned to the dormitory to break up the fight. Add'l Facts at 3-4. The incident began when Arnold noticed fellow inmate Rasheed Binns following him into the dormitory where he "produced a weapon." Id. at 3. Arnold attempted to get the attention of officers on duty, including Watson, but none were paying attention. See id. at 3-5. Arnold, seeking to avoid Binns, walked towards the bathroom and Binns followed. Id. at 3. Binns then attacked Arnold, cutting his ear – an injury that would later require 20 to 23 stitches. Id. Meanwhile, Binns and Arnold's struggle drew the attention of corrections officers who sounded an alarm. Id. Binns then fled the area while Arnold grabbed a towel and applied pressure to his head to stop the bleeding. Id. Arnold began to walk towards Watson who had called for the ERT. Id. Upon entering the area, the ERT ordered Arnold to lie on the floor. Id. While Arnold

---

[1] Arnold has attached several documents to his complaint in which he elaborates on his allegations. In citing to these and to Arnold's response papers, the Court has inserted exhibit letters and page numbers where necessary.

3

complied, one of the ERT officers stepped on his lower back causing Arnold to cry out. Id. The ERT officer responded by "shoving his boots deeper into" Arnold's back ordering him to "shut up." Id. The ERT "then shackled [Arnold] and handcuffed" him while "twist[ing] batons inbetween [his] arms behind his back lifting [him] to his feet." Id. at 4. He was made to run in this position which he could not sustain and eventually was dragged to a Special Housing Unit. Id. Placed in a cell, Arnold was instructed to remove his clothes and lie down and then ordered to "reach back and open [his] asshole." Id. at 9. Arnold states he was "laughed at like a rape victim." Id. at 10. Arnold was eventually taken to Westchester Medical Center where he underwent reconstructive surgery to reattach his right ear. Id. at 4.

In his complaint, Arnold raises several grounds for relief. First, Arnold states that defendants Carden and Kadel "refused to move [him] from [the] Bunk Beds proved to be hazzardous [sic]. . . . [T]his hazzardous equiptment [led] to" Arnold's back injury. Id. at 2. Second, Arnold blames Watson for his negligence in "not being attentive and allowing Rasheed Binns to enter the" dormitory "with a weapon in plain view" of the officers. Id. at 5. He further faults Watson for not properly communicating the situation to the ERT, thereby leading to his assault by ERT officers. Id. at 6. Third, he claims that ERT staff used "excessive force" and "torture tactics" permanently injuring him by stepping on his back even after Arnold yelled out in pain. See id. at 6. As a result, his back remains seriously injured and he must take regular pain medication. Compl. at 3. Fourth, he claims that ERT officers sexually abused him following the attack. Add'l Facts at 9-10.

Defendants raise several grounds for dismissing Arnold's complaint: (1) the claims against the Westchester Department of Corrections should be dismissed because it is an improper defendant and not an independent legal entity capable of being sued; (2) Arnold's pleadings are

4

insufficient under Federal Rules of Civil Procedure 8 and 10; (3) Arnold did not exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a), nor should his failure to exhaust be excused; (4) Arnold's complaint does not state a cause of action cognizable under 42 U.S.C. § 1983 against defendants Kadel, Carden, and Watson; and (5) to the extent that Arnold attempts to raise a claim against Westchester County, he has not pled that the defendants were acting in their official capacity "pursuant to an officially adopted municipal policy or custom." Def. Mem. at 4-19.

II.     LEGAL STANDARD OF REVIEW

    A.     Motion to Dismiss

A party may move for judgment pursuant to Federal Rule of Civil Procedure 12(b)(6) where the opposing party has "fail[ed] to state a claim upon which relief can be granted." Separately, Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under this rule, a complaint "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (quoting Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002)).

Nonetheless, the Supreme Court has held that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations, internal quotation marks, and brackets omitted); see also 550 U.S. at 557 (pleading must "possess enough heft to show that the pleader is entitled to relief" (citations, internal quotation marks, and brackets omitted)). "Where a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation and internal quotation marks omitted); accord Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) ("a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion" (citations omitted)).

In the case of pro se plaintiffs who "lack familiarity with the formalities of pleading requirements, [a court] must construe [those] complaints liberally, applying a more flexible standard to evaluate their sufficiency." Lerman v. Bd. of Elections of N.Y., 232 F.3d 135, 140 (2d Cir. 2000), cert. denied, 533 U.S. 915 (2001); accord In re Sims, 534 F.3d 117, 133 (2d Cir. 2008); McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se party's pleadings should be construed liberally and interpreted "'to raise the strongest arguments that they suggest'" (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994))).

III.   DISCUSSION

   A.   Whether Arnold's Complaint is Insufficient under FRCP 8 and 10

Defendants urge the Court to dismiss Arnold's complaint arguing that it "fails to comply with Federal Rules of Civil Procedure Rule 8 and Rule 10." Def. Mem. at 5. As noted, Rule 8(a) requires that a pleading contain a concise and clear explanation of the plaintiff's claims and grounds for relief. Rule 10(b) is largely a formatting rule, instructing that:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

Defendants argue that even in light of Arnold's pro se status, his pleadings are "completely disorganized and difficult to read, contains a myriad of legal conclusions, scattered factual allegations, and demands set forth in multiple unnumbered pages using unnumbered paragraphs." Def. Mem. at 6. Although Arnold's papers are not fully compliant with Rule 10, it is reasonably clear what his claims are in this case. Arnold discusses each of the incidents of mistreatment separately with individual headings and sub-headings. His descriptions are readily understandable. Thus, it is not difficult to discern the claims Arnold is attempting to make.

Accordingly, defendants' request that Arnold's complaint be dismissed for failure to comply with Federal Rules of Civil Procedure 8 and 10 should be denied.

>    B.   Whether Westchester County Department of Corrections and the "Emergency Response Team" is a Proper Defendant

Defendants argue that all claims against the Westchester County Department of Corrections should be dismissed on the ground that it is not subject to suit as a municipal agency. Def. Mem. at 4; Def. Reply at 1-2. Rather than weigh in on the question of whether the Westchester County Department of Corrections is a suable entity, the Court may simply order the substitution of Westchester County as the proper party defendant in light of the fact that plaintiff apparently does not oppose such a substitution, see Pl. Resp. at 1 ("Westchester County Dept of Corrections is the alter ego of Westchester County"). See generally Jones v. Westchester County Dep't of Corr. Med. Dep't, 557 F. Supp. 2d 408, 416 n.4 (S.D.N.Y. 2008) (substituting Westchester County for Department of Corrections' Medical Department); see also Butler v. Westchester County, 2000 WL 335539, *1 n.2 (S.D.N.Y. Mar. 30, 2000) (considering Westchester County as "the real party of interest without making a determination whether D.O.C. is a suable entity").

B.      Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides in relevant part that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Accordingly, "[c]omplete exhaustion of . . . administrative remedies through the highest level for each claim is required." Veloz v. New York, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004) (citation omitted), aff'd, 178 F. App'x 39 (2d Cir. 2006); see also Porter v. Nussle, 534 U.S. 516, 524 (2002) ("All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'") (citations omitted)). In addition, the exhaustion must be "[p]roper" – that is, "compl[y] with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). The exhaustion requirement applies to excessive force claims as well as to "other complaints about general conditions of prison life." Ruggiero v. County of Orange, 467 F.3d 170, 173 (2d Cir. 2006). Failure to exhaust administrative remedies under the PLRA is an affirmative defense, see Jones v. Bock, 549 U.S. 199, 216 (2007), and thus the defendants have the burden of proving that Arnold's claims have not been exhausted. See, e.g., Key v. Toussaint, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Westchester County Department of Corrections Inmate Rules and Regulations Handbook outlines the grievance procedure in place at Westchester County Jail. Inmate Rules and Regulations Handbook (annexed as Ex. D(2) to Rotini Decl.), at 6-7. Prior to filing a formal grievance, inmates must "exhaust all the steps in the informal complaint process." Id. at 6. To

do so, inmates must make an initial complaint to the Block Officer who is required to record the complaint in a log book and attempt to resolve the matter informally. Id. If the complaint cannot be resolved informally by either the Block Officer or the Section Supervisor, inmates may then file a formal grievance and are expected to obtain forms from the Block Officer or the facility's law library. Id. After the grievance is evaluated by a Grievance Coordinator, it is appealable to the Facility Grievance Coordinator. Id. Finally, inmates may appeal determinations by the Facility Grievance Coordinator to the NYS Commission of Correction's Citizen's Policy and Complaint Review Council. Id.

Defendants argue that Arnold's claims should be dismissed because he failed to exhaust his administrative remedies prior to commencing this action. Def. Mem. at 8. Because the parties have submitted documents beyond the pleadings to support their respective positions on whether this case should be dismissed on exhaustion grounds, the Court will convert defendants' motion to dismiss to a motion for summary judgment on the question of exhaustion. See Fed. R. Civ. P. 12(d).[2]

Here, it is not disputed that Arnold failed to file any grievance as required by the facility's rules. The Second Circuit, however, has outlined three exceptions to the exhaustion requirement, holding that a prisoner is not required to exhaust where:

> (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such [a] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

---

[2] Inexplicably, defendants failed to comply with the Court's specific directive, made before the filing of the instant motion, to move in the alternative for summary judgment on the issue of exhaustion. See Order, filed Aug 6, 2009 (Docket # 6).

Ruggiero, 467 F.3d at 175-76 (citations and internal quotation marks omitted).

With respect to the claim that on April 4, 2007, Kadel and Carden failed to relocate him after he complained that his sleeping assignment was dangerous, Arnold's complaint states: "I did not file a grievance because after I complained to medical and officers . . . I injured myself and was moved."  Compl. at 4.  With respect to the April 10, 2007 incident, Arnold's complaint states that he did not file a grievance because "compensation and remedies are beyond grievance."  Id.  However, in response to defendants' motion to dismiss, Arnold provided a different explanation for failing to grieve the April 10 incident.  He stated that "on, or about, [April 10, 2007], while on keeplock on A-block I requested a grievance form from the officer working the block and I was denied by the officer who said he did not have any grievance forms."  Affidavit (annexed as Ex. 6 to Pl. Resp.) ("Pl. Aff.") ¶ 1.  He also asserts that he was "denied access to the law library."  Id. ¶ 2.  Somewhat inconsistently, elsewhere in his response he states that, immediately following the attack, he was under heavy sedation and in considerable pain which prevented him from requesting grievance forms.  Pl. Resp. at 8, 13.

Defendants do not provide any argument that these assertions, if accepted as true, would not show that remedies were "not available" to Arnold under Ruggerio.[3]  Instead, they argue that Arnold cannot modify his complaint by "affidavit[s] or by papers filed in response to a dispositive motion to dismiss or for summary judgment."  Def. Reply at 6 (quoting Brownstone Inv. Group, LLC v. Levey, 468 F. Supp. 2d 654, 660 (S.D.N.Y. 2007)).  The cases defendants

---

[3] The defendants do argue that the written policy of the Department suggests that a "sector supervisor" will provide a grievance form when requested by an inmate.  Def. Reply at 5.  But the written policy is of limited relevance as defendants do not provide evidence that this policy was carried out in Arnold's case.

10

cite, however, involve situations where a party had attempted to use opposition papers to a motion to dismiss to amend a complaint by including allegations that were not contained in the party's original pleading.  Because exhaustion is an affirmative defense, however, see Jones, 549 U.S. at 215-16; Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004), Arnold had no obligation to plead exhaustion in his complaint at all.  Thus, his papers contradicting the statements in the complaint on exhaustion have not been submitted in order to obtain an amendment of the complaint.  While Arnold's change in position may call his credibility into question, there is no legal warrant for disregarding his assertions on the question of exhaustion.  At least one other case has declined to hold a pro se plaintiff "to his statements regarding exhaustion made in the complaint where those statements contradict[ed]" a later affirmation.  Rodney v. Goord, 2003 WL 21108353, at *5 (S.D.N.Y. May 15, 2003).

We now turn to the merits of Arnold's claims.

C.   Merits

To state a claim under section 1983, Arnold must show that he was denied a constitutional or federal statutory right and that the deprivation of such right occurred under color of state law.  See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988).  Section 1983 does not grant any substantive rights but rather "provides a procedure for redress for the deprivation of rights established elsewhere," such as in the Constitution or federal statutes.  Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), cert. denied, 512 U.S. 1240 (1994).  While Arnold does not specify what constitutional or federal rights were violated by defendants' actions, the facts in his complaint suggest that as a pretrial detainee, Arnold is seeking relief against Kadel, Carden, and Watson for violations of his due process rights under the Fourteenth Amendment arising from: (1) defendants Kadel and Carden's refusal to relocate

11

him after he complained about the hazardousness of his dorm bed assignment; and (2) the inmate assault, excessive use of force, and sexual abuse that occurred on April 10, 2007.  Add'l Facts at 2-6, 9-10.

        i.    Whether Arnold Raises a Cognizable Claim based on Defendants' Failure to Move Arnold to a New Bed Assignment

Arnold alleges that defendants Kadel and Carden refused to move him from his bunk bed after he had complained that it constituted a hazard because it lacked steps or ladders.  Id. at 2. "While the Eighth Amendment's prohibition against cruel and unusual punishment does not mandate comfortable prisons, the conditions of confinement must be at least humane."  Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (citations and internal quotations omitted).[4]  An inmate may assert a federal claim challenging the conditions of his confinement by showing "(1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety."  Id. (citation and internal quotations omitted).

"An inmate attempting to show deliberate indifference must demonstrate that the defendants acted or failed to act while actually aware of a substantial risk that serious inmate harm would result."  Farid v. Ellen, 593 F.3d 233, 248 (2d Cir. 2010) (citation and internal bracketing and quotations omitted).  Here, Arnold does not allege a deprivation severe enough to

---

[4] Arnold's claims under the Fourteenth Amendment as a pretrial detainee are analyzed in the same manner as if he were a sentenced prisoner making claims under the Eighth Amendment. See Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment.").

rise to the level of a constitutional violation. Bunk beds without steps or ladders are commonly used in many circumstances both inside and outside of prisons. Arnold describes himself as a 200-pound 40-year-old male. Pl. Resp. at 2. While Arnold may have made complaints about the bed, there is nothing that would suggest that a prison official's decision to require him to use it notwithstanding the complaint represents either deliberate indifference to Arnold's health and safety, or that the officials should have known that requiring him to use the bed represented such a serious risk to Arnold "that he was denied the minimal civilized measure of life's necessities." Gaston, 249 F.3d at 164.

        ii.       Whether Arnold Raises a Cognizable Claim based on the April 10, 2007 Assault

Arnold alleges that on April 10, 2007 he was assaulted first by a fellow inmate and second by the facility's ERT summoned to the dormitory to break up the fight. Add'l Facts at 3-6. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). We will, therefore, examine the allegations made against Watson as he is the only party to this motion whom Arnold has named as having any direct involvement in the assault by Binns and subsequent alleged excessive use of force and sexual abuse by the ERT.[5]

Arnold's papers are fairly construed as claiming that Watson was deliberately indifferent to his safety in failing to protect him from the initial assault by Binns and subsequent assault and abuse by the ERT. See Add'l Facts at 6. The Eighth Amendment imposes a duty on prison

---

[5] While Arnold has named the "Emergency Response Team" as a defendant, see Compl. at 2, the team as a whole is plainly not a suable entity. Arnold has not named any particular members as defendants. Nor has he named any of its members as "John Doe" defendants.

officials "to take reasonable measures to guarantee the safety of inmates in their custody." Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994)); accord Murray v. Goord, 668 F. Supp. 2d 344, 357 (N.D.N.Y. 2009) ("The Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishment, tasks prison officials with taking reasonable measures to guaranty the safety of inmates; included within this duty is the obligation to protect prisoners from harm caused by fellow inmates." (citations omitted)). In such cases, a plaintiff must meet the test for deliberate indifference. See Hayes, 84 F.3d at 620. Thus, the prisoner "must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm," and second, the prisoner "must demonstrate that the defendant prison officials possessed sufficient culpable intent." Id.

Defendants make no specific argument that Arnold's allegations regarding Watson fail to meet the two prongs of this test. Plainly, being placed in the proximity of a fellow prisoner with a weapon poses a "substantial risk of serious harm." See Hannah v. Vanguilder, 2010 WL 1372385, at *5 (N.D.N.Y. Feb. 11, 2010) ("permitted weapons to be introduced into the recreation area creat[es] an unreasonable risk to the safety of inmates"). The more difficult question is whether the facts alleged by Arnold show that Watson "possessed sufficient culpable intent." Hayes, 84 F.3d at 620. To be liable for deliberate indifference, the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. One example of this occurs where "a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the

risk and thus must have known about it." Id. at 842-43 (quotations and internal citation omitted).

At one point in his papers, Arnold alleges that Watson was "not being attentive." Add'l Facts at 5. If this were the only allegation regarding Watson's state of mind, it would plainly be insufficient as there is no liability under section 1983 for negligence. See, e.g., Morales v. N.Y. State Dep't of Corr., 842 F.2d 27, 30 (2d Cir. 1988) (section 1983 does not provide cause of action for negligent failure of prison officials to protect an inmate from injury). Arnold, however, also alleges that prior to the attack, Watson "allow[ed] [Binns] to enter unauthorized be area [sic] with a weapon in plain view in front of Officers." Add'l Facts at 5 (emphasis added). While it is a close question, the Court believes that this allegation is sufficient, at this early stage of the case, to raise a reasonable inference that Watson was aware of Binns's possession of the weapon and did nothing to deal with the fact that Binns was going to expose the other inmates to a serious risk. See Baker v. Rodriguez, 1991 WL 156375, at *2 (S.D.N.Y. Aug. 8, 1991) (defendant's failure to act upon knowledge that inmate possessed a 24-inch hatchet later used to attack plaintiff gave rise to genuine issue of material fact on the issue of defendant's deliberate indifference); see also Bourguignon v. Lantz, 2006 WL 214009, at *4 (D. Conn. Jan. 25, 2006) (defendant's failure to secure razors from inmates later used in an attack sufficient for court to infer deliberate indifference). As a result, Arnold's claim against Watson should be allowed to proceed.

The Court rejects Arnold's suggestion that Watson acted improperly by allowing the ERT to enter. While Arnold states that "lack of communication between Watson and ERT [led] to Plaintiff being injured by E.R.T. when Plaintiff was only the victim of an 'Assault,'" Add'l Facts at 6, this assertion is too vague and conclusory to impose liability on Watson.

Finally, Arnold does not plead facts to find Westchester County liable as a municipality under Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978), because his complaint does not allege the existence of an unconstitutional custom or policy of Westchester County. See id. at 691-92; accord Anthony v. City of N.Y., 339 F.3d 129, 139 (2d Cir. 2003).

Conclusion

For the foregoing reasons, defendants' motion to dismiss should be granted in part and denied in part. Specifically, Arnold's claims against Watson, Carden, Kadel, and the Westchester County Department of Corrections should be dismissed with the exception of the claim against Watson alleging that Watson was deliberately indifferent to the risk posed to Arnold by Binns. Arnold should be permitted to replead his dismissed claims if he is able to do so. See, e.g., Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir.1999) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."). Westchester County should be substituted as a defendant for the Westchester Department of Corrections.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Jed S. Rakoff, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Rakoff. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474

U.S. 140 (1985).

Dated: April 16, 2010
New York, New York

                                                                                     _____
                                                                                      GABRIEL W. GORENSTEIN
                                                                                      United States Magistrate Judge

Copies sent to:

Stanley A. Arnold
10-A-0865
Downstate Correctional Facility
Box F
Red School House Road
Fishkill, NY 12524

Melissa-Jean Rotini
Assistant County Attorney, of Counsel
148 Martine Avenue
White Plains, NY 10601

U.S. 140 (1985).

Dated: April 16, 2010
New York, New York

                                          GABRIEL W. GORENSTEIN
                                          United States Magistrate Judge

Copies sent to:

Stanley A. Arnold
10-A-0865
Downstate Correctional Facility
Box F
Red School House Road
Fishkill, NY 12524

Melissa-Jean Rotini
Assistant County Attorney, of Counsel
148 Martine Avenue
White Plains, NY 10601

17